# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1578

_____

Sandra Lee Calkins

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 15, 2015
Filed: August 4, 2015

_____

Before RILEY, Chief Judge, BRIGHT and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Sandra Calkins pled guilty to bank fraud in violation of 18 U.S.C. § 1344. The district court[1] sentenced Calkins to 66 months imprisonment, five years of supervised release, and over 8.6 million dollars in restitution. We affirmed Calkins' sentence on

_____

[1] The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

direct appeal.  She now brings this 28 U.S.C. § 2255 petition alleging ineffective assistance of counsel.  The district court denied Calkins' petition, and we affirm.

At her plea hearing, Calkins admitted that she had acquired loans for her business by providing false financial information to both Central Bank in Eden Prairie and a number of individual investors, and she pled guilty to bank fraud in violation of 18 U.S.C. § 1344.  Before sentencing Calkins had asserted that the total loss amount from the fraud was $1,162,000, but at her sentencing hearing she took responsibility for the $8,675,917.10 loss amount calculated in the presentence investigation report (PSR), asserting only that the PSR's calculation should be reduced based on interest payments she had made to the fraud victims.  The district court rejected Calkins' argument, applied a 20 point increase to her offense level for a loss amount exceeding 7 million dollars, and calculated a guideline range of 78 to 97 months based on a total offense level of 28 and criminal history category I. Calkins' counsel argued for leniency under 18 U.S.C. § 3553(a), noting Calkins' advanced age and ability to pay restitution.  The district court imposed a below guideline sentence of 66 months imprisonment and five years of supervised release. It also ordered $8,675,917.10 in restitution.

After we affirmed Calkins' sentence on direct appeal, Calkins brought a § 2255 petition alleging ineffective assistance of counsel.  She argued, among other things, that her trial counsel should have challenged the loss amount calculated in the PSR and requested an evidentiary hearing to determine whether each of the individual investors whose losses were included in the total loss amount had relied on Calkins' fraudulent financial statements.  The district court dismissed her § 2255 petition and denied a certificate of appealability.

We granted Calkins a certificate of appealability on whether her "counsel provided ineffective assistance by failing to obtain and present evidence related to loans by individual investors, and by not challenging the loss amount to the extent it

was based on losses by investors who were not shown to have relied on the fraudulent financial statements."

We review de novo "post conviction ineffective assistance claims brought under § 2255" and the "underlying findings of fact for clear error." Tinajero-Ortiz v. United States, 635 F.3d 1100, 1103 (8th Cir. 2011).  In order to prevail, Calkins must show that her "attorney's performance fell below a professional objective standard of reasonableness" and that she "was prejudiced." Etheridge v. United States, 241 F.3d 619, 622 (8th Cir. 2001) (citing Strickland v. Washington, 466 U.S. 668 (1984)).  We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and when "determining whether counsel's representation was deficient, a court must avoid second guessing trial strategy." Johnson v. United States, 278 F.3d 839, 842 (8th Cir. 2002).

Calkins argues that at sentencing, her trial counsel should have contested the PSR's loss amount calculation and requested an evidentiary hearing rather than concentrating on a leniency argument based on the § 3553(a) factors.  The record establishes, however, that Calkins' trial counsel reviewed the government's evidence on loss before recommending that she request leniency under § 3553(a) rather than "risk losing a . . . reduction for acceptance of responsibility by disputing" loss amount.  See United States v. McClain, 149 F. App'x 549, 551 (8th Cir. 2005).  The strategy recommended to Calkins was effective.  By contesting loss amount and assuming her assertions were all true, Calkins could at most have secured a two point decrease in her offense level.  See U.S.S.G. § 2B1.1(b)(1)(J)-(K).  In contrast, by making the strategic choice to accept responsibility and request lenience under § 3553(a), Calkins obtained a three point offense level decrease and a 12 month downward variance.

The dissent argues that Calkins' attorney was ineffective because counsel did not review certain victim impact statements underlying the government loss amount

-3-

calculations.[2]  The record establishes, however, that the government offered to meet "with Ms. Calkins, [her attorney], and the probation officer . . . to lay out what [the] evidence is for everybody to see."  Nevertheless, Calkins chose not to attend that meeting, and she has not disputed on appeal that "defense counsel met with the government and reviewed the government's evidence."  Thus, the dissent's assertion that Calkins' attorney provided ineffective assistance by failing to review evidence cannot be accepted as accurate because it is "contradicted by the record."  Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995).

Given the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Johnson, 278 F.3d at 842, we conclude that Calkins has not met her "burden of proving that . . . [her] lawyer's actions were not valid trial strategy."  Thai v. Mapes, 412 F.3d 970, 979 (8th Cir. 2005).  For these reasons we affirm the judgment of the district court.

BRIGHT, Circuit Judge, dissenting.

I respectfully dissent.  Because a lawyer's failure to investigate the facts underlying a summary in a Presentence Investigation Report (PSR) can amount to ineffective assistance of counsel and the record does not clearly establish Sandra Calkins' (Calkins) trial counsel investigated the facts underlying the number of victims and the loss amounts to individual investors as summarized in the PSR, I would reverse and remand for an evidentiary hearing because "[a]bsent . . . clarity, an evidentiary hearing [on a 28 U.S.C. § 2255 motion] is required."  Latorre v. United States, 193 F.3d 1035, 1038 (8th Cir. 1999) (emphasis added).

---

[2] Although the dissent asserts in a quotation from part of the sentencing transcript that the victim impact statements were only available to probation and "not provided to the parties," the record shows in a later section of the same transcript that Judge Magnuson ordered the "victim impact statements be provided to counsel in camera by the probation office."  See Sent'g Tr. 30:6–9, ECF No. 34.

-4-

# I.  FACTS

Calkins pled guilty to one-count bank fraud in violation of 18 U.S.C. § 1344. In her plea, Calkins admitted to preparing and submitting false bank statements for her company, causing the bank to suffer a loss of approximately $1.57 million. Calkins further admitted that approximately 13 individual investors had seen faulty financial documents, causing $562,000 in losses.  At the plea hearing, Calkins stated "[t]hat would be the maximum number of [individual investors] who may have relied on [the faulty financial] information."

Before issuing the PSR, a probation officer interviewed Calkins and advised her to submit an acceptance of responsibility statement.  In the statement, Calkins admitted to submitting fraudulent financial statements to the bank and admitted: "There were a number of other smaller investors who may or may not have relied upon false information from me.  At this point, I simply do not have the documentation to be sure exactly which people were defrauded, but believe that number is in excess of ten investors."

The probation officer issued a PSR, summarizing a list of 44 individual investors who were allegedly victims of Calkins' fraud with approximately $8.8 million in losses (hereinafter, "the summary").  As admitted by the government, the individual investor information originated from victim impact statements submitted by alleged victims to the probation officer.   At the sentencing hearing, the government described the parties' access to the victim impact statements:

> The basis for the numbers in [the summary], your Honor, as I understand it, are from Victim Impact Statements that have been presented to Probation and not provided to the parties.  And, so, in terms of what the Government can show with respect to its numbers, it's based on interviews with the victims.  And I know that that information has been supplemented by information provided by Probation through Victim

Impact Statements.   <u>We don't have access to the Victim Impact Statements</u>.

(Emphasis added).

Calkins' trial counsel objected to the summary—for both the number of victims and the loss amounts.  At this time, Calkins "believe[d] that only 14 victims were defrauded based on her misrepresentations of [Calkins' company] financials" and, thus, Calkins opined the loss amount was only $1.16 million to individual investors.

After submitting objections, Calkins' trial counsel attended a meeting with the government to discuss the parties' disagreements over the PSR.  Calkins elected not to attend the meeting.  There is no evidence in the record regarding discussions that took place or evidence that was reviewed by Calkins' trial counsel during the meeting.[3]

---

[3]The majority adopts the government's broad contention that "the record makes clear" Calkins' trial counsel "reviewed the government's evidence which demonstrated . . . Calkins' investors were properly considered relevant conduct under the guidelines."  To support its position, the government points to:  (1) evidence Calkins' trial counsel planned to meet with the government; (2) evidence a meeting between the government and Calkins' trial counsel occurred; (3) statements by Calkins' trial counsel that Calkins reviewed the PSR after the meeting, acknowledged the number of victims under the government's definition, and proceeded to only contest certain deductions; and (4) evidence regarding Calkins' trial counsel's interpretation of the phrase "relevant conduct" and opinion that if Calkins contested committing investor fraud it would prevent an acceptance of responsibility deduction.  None of this evidence "makes clear" Calkins' trial counsel did a proper investigation into the victim impact statements to ensure the summary was accurate.

The majority further asserts that Calkins does not dispute her trial counsel failed to review the government's evidence.  While not her primary argument, Calkins does argue on appeal that trial counsel was ineffective for "blindly accept[ing] the United States' claimed loss."  Calkins made the same argument to the district court.

-6-

After the meeting, Calkins' counsel abandoned its objection to the summary for both the victim number and the loss amounts—capitulating to the government's view that "relevant conduct" included "[a]nyone that invested anything from the day the bank received false information . . . because the very existence of the business depended on the fraud." (Emphasis added).  Calkins' trial counsel further informed the district court and the probation officer that she had met with Calkins, Calkins had reviewed the PSR, and Calkins acknowledged the number of victims under the government's definition.  At the sentencing hearing, Calkins' trial counsel stated that Calkins was adopting the PSR's offense-level computations, with some minor exceptions.  Calkins' trial counsel did not contest the summary.  Calkins' trial counsel did focus on an argument for leniency under 18 U.S.C. § 3553(a).

The district court adopted the PSR's findings of fact and guideline calculations (including the summary).  Calkins was sentenced to a 66-month term of imprisonment and 5-years supervised release.  The district court also ordered restitution.

After we affirmed Calkins' sentence on direct appeal, Calkins brought this pro se section 2255 petition alleging, as relevant to this appeal, ineffective assistance of counsel.  Calkins alleged her trial counsel failed to investigate the facts underlying the individual investors in the summary, in spite of her repeated assertions that many of the individual investor loans were not relevant conduct.  Calkins averred that instead of investigating the summary, her trial counsel "blindly"[4] accepted the

---

[4]Importantly, had Calkins' trial counsel contested the summary, the government would have been required to present evidence to support the summary at the sentencing hearing.  See, e.g., United States v. Adetiloye, 716 F.3d 1030, 1039 (8th Cir. 2013) ("Where, as here, the defendant has objected to the amount of loss attributable to him" under the Mandatory Victims Restitution Act, the government must meet its burden of proof); United States v. Hartstein, 500 F.3d 790, 796 (8th Cir. 2007) ("Summary tables of accounting data that are based on evidence not before the court, and that a party has challenged as inaccurate, are not sufficient to support a court's factual finding.").

Appellate Case: 14-1578   Page: 7   Date Filed: 08/04/2015 Entry ID: 4302704

government's loss calculations.  Calkins concluded that, because of her trial counsel's failure to investigate, the summary was inaccurate and included both individual investors and loss amounts that were not relevant conduct.  Thus, Calkins alleged she was prejudiced because Calkins would have received a shorter sentence had the loss calculation been accurate.

The district court dismissed Calkins' section 2255 petition without an evidentiary hearing.  We granted Calkins a certificate of appealability on whether her "counsel provided ineffective assistance by failing to obtain and present evidence related to loans by individual investors, and by not challenging the loss amount to the extent it was based on losses by investors who were not shown to have relied on the fraudulent financial statements."  For the reasons set forth below, I would remand to the district court for an evidentiary hearing.

## II.  DISCUSSION

A petitioner "is entitled to an evidentiary hearing on a section 2255 motion unless the motion, files and records of the case conclusively show that the [petitioner] is not entitled to relief."  Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995) (emphasis added) (citing 28 U.S.C. § 2255 and Voytik v. United States, 778 F.2d 1306, 1308 (8th Cir. 1985)).  Thus, "when a district court denies a [section] 2255 motion without an evidentiary hearing, as in this case, we affirm only if our de novo review reveals that the motion and the files and records of the case conclusively show that [the petitioner] is entitled to no relief."  Roundtree v. United States, 751 F.3d 923, 925 (8th Cir. 2014) (citation omitted) (internal quotation marks omitted).  "Although we review a district court's decision to deny an evidentiary hearing for abuse of discretion, we are obligated to look behind that discretionary decision to the court's rejection of the claim on its merits, which is a legal conclusion that we review de novo."  Deltoro-Aguilera v. United States, 625 F.3d 434, 436 (8th Cir. 2010) (quoting Noe v. United States, 601 F.3d 784, 792 (8th Cir. 2010)) (internal quotation marks omitted).

-8-

A record "conclusively show[s]" a petitioner is not entitled to relief only when the petitioner's allegations:  (1) "accepted as true, would not entitle the petitioner to relief"; or (2) "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Engelen, 68 F.3d at 240.  In this case, the record does not conclusively establish Calkins is not entitled to relief.

## A.  Calkins' Allegations, Accepted as True, Would Entitle Her to Relief for Ineffective Assistance of Counsel.

To begin, I analyze whether Calkins would be entitled to relief if we accept, as true, her allegations that trial counsel failed to investigate the facts underlying the summary and, as such, caused Calkins to receive a longer sentence.  I conclude Calkins would be entitled to relief.

A claim of ineffective assistance of counsel under section 2255 is scrutinized under the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  In order to prevail, a petitioner must show that his/her "attorney's performance fell below a professional objective standard of reasonableness" and that s/he "was prejudiced." Etheridge v. United States, 241 F.3d 619, 622 (8th Cir. 2001) (citing Strickland, 466 U.S. at 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674).

Calkins alleged her trial counsel's performance fell below a professional objective standard of reasonableness.  We have held that, in many cases, it is not objectively reasonable for an attorney to fail "to avail himself of opportunities to discover the substance of [a PSR], and to develop and present rebuttal material" at sentencing.  Ryder v. Morris, 752 F.2d 327, 332 (8th Cir. 1985), cert. denied, 471 U.S. 1126, 105 S. Ct. 2660, 86 L. Ed. 2d 276 (1985).[5]  A failure to investigate the

---

[5]Notably, we have also concluded that when the record is unclear as to whether an investigation into the substance of a PSR occurred, remand to the district court for

facts underlying a PSR is objectively unreasonable because a lawyer has an overarching duty to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." West v. United States, 994 F.2d 510, 513 (8th Cir. 1993) (quoting Ryder, 752 F.2d at 332) (internal quotation marks omitted); see also United States v. Tucker, 603 F.3d 260, 264-65 & n.5 (4th Cir. 2010) (holding counsel's failure to object to the improper use of a conviction as a predicate violent felony in a PSR was not objectively reasonable); United States v. Curtis, 360 F. App'x 413, 414-15 (4th Cir. 2010) (per curiam) (unpublished) (holding counsel's failure to object to an erroneous guideline range was objectively unreasonable); Arredondo v. United States, 178 F.3d 778, 788 (6th Cir. 1999) (holding counsel failed to satisfy an objective standard reasonableness for "failure to investigate, participate in, and prepare for the sentencing proceedings").

Here, Calkins alleged that she repeatedly asked trial counsel to obtain evidence regarding the individual investor loans in the summary.  Calkins stated that instead of investigating the individual investor loans, trial counsel "blindly" accepted the government's loss calculations—capitulating to the government's broad view that "relevant conduct"[6] included "[a]nyone that invested anything from the day the bank

---

a hearing on the issue is appropriate.  See West v. United States, 994 F.2d 510, 513 (8th Cir. 1993) (remanding for an evidentiary hearing when a petitioner's allegation his trial counsel did not investigate errors in the PSR was sufficient to create a question of fact as to whether the petitioner's trial counsel's representation fell below an objective standard of reasonableness); Ryder v. Morris, 752 F.2d 327, 332-33 (8th Cir. 1985) (remanding for an evidentiary hearing to determine whether counsel was ineffective for failing to investigate inaccuracies in a PSR).

[6]"Relevant conduct" under the Guidelines includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" that occurred "in preparation for [the offense of conviction], or in the course of attempting to avoid detection or responsibility for that offense." U.S. Sentencing Guidelines Manual § 1B1.3(a)(1)(A).  The government argues at length that we should assume all of the individual investors and the loss amounts in

received false information." (Emphasis added). By doing so, Calkins asserted that trial counsel failed to discover inaccuracies in the summary—specifically the inclusion of non-relevant conduct in the loss amount. If Calkins is correct, her trial counsel's failure to investigate the facts underlying the summary in the PSR was not objectively reasonable. See West, 994 F.2d at 513 (allegation trial counsel failed to investigate errors in the PSR was sufficient to create a fact question on whether representation fell below an objective standard of reasonableness); Ryder, 752 F.2d at 332-33 (remanding to determine whether counsel was ineffective for failing to investigate inaccuracies in a PSR).

Calkins also alleged prejudice. The Guidelines in fraud cases rely on the loss amount to calculate the length of sentence. See U.S. Sentencing Guidelines Manuel § 2B1.1(b)(1) (increasing offense level in fraud cases by amount of loss). Thus, taking Calkins' allegation that the summary contained non-relevant conduct as true,

---

the summary were relevant conduct because "we take a broad view of what conduct and related loss amounts can be included in calculating loss." See, e.g., United States v. Lewis, 557 F.3d 601, 614 (8th Cir. 2009) (citation omitted) (internal quotation marks omitted). But our "broad view" does not permit the government to include as "relevant conduct" loans where no criminal conduct actually occurred. See United States v. McLain, 646 F.3d 599, 604-05 (8th Cir. 2011) (holding, in a case regarding failure to pay employment taxes, that the district court erred by including in the loss calculation amounts that defendant counseled others to fraudulently deduct on their income tax returns, when there was no evidence the returns were ever prepared using such deductions and thus there was no evidence of criminal conduct); United States v. Bernegger, 661 F.3d 232, 241-42 (5th Cir. 2011) (per curiam) (holding the district court clearly erred in including in the loss amount additional loans obtained by the defendant when there was no evidence the loans were obtained in a fraudulent manner); United States v. Anderson, 174 F.3d 515, 526 (5th Cir. 1999) (holding that "for acts to constitute relevant conduct, the conduct must be criminal"). Thus, without evidence in the record to support the government's position that Calkins defrauded all of the individual investors in the summary, an evidentiary hearing is necessary to determine whether the summary contains only "relevant conduct."

there is a reasonable probability that Calkins would have received a shorter sentence had the loss amount been accurate.

Therefore, Calkins would be entitled to relief for ineffective assistance of counsel if we accept her allegations as true.

**B.   Calkins' Allegations Are Not Contradicted by the Record, Inherently Incredible, or Conclusions Rather than Statements of Fact.**

Because Calkins would be entitled to relief if we accept her allegations as true, the law requires an evidentiary hearing, see Latorre, 193 F.3d at 1038, unless Calkins allegations are "contradicted by the record, inherently incredible, or conclusions rather than statements of fact," Engelen, 68 F.3d at 240.

The majority concludes that Calkins is not entitled to an evidentiary hearing because "[t]he record establishes . . . that Calkins' trial counsel reviewed the government's evidence on loss." To the contrary, there is nothing in the record that contradicts Calkins' representation that her trial counsel failed to conduct a thorough investigation of the facts underlying the summary. In fact, the record supports the opposite. At the sentencing hearing, after adopting the PSR, the district court asked the government to explain the source of the summary. The government admitted that the source material was victim impact statements and that the victim impact statements had "not [been] provided to the parties."[7] (Emphasis added). Thus, based

---

[7]The majority suggests that the government's admission that the victim impact statements had "not [been] provided to the parties" prior to sentencing was immaterial because the sentencing judge later "suggest[ed]" the "[v]ictim [i]mpact [s]tatements be provided to counsel in-camera by the probation office." (Sent'g Tr. 30:6-9). But this occurred after the sentencing judge "adopt[ed]" the PSR for the purpose of sentencing, with no objections by Calkins' trial counsel. (Id. at 3:8-16). Thus, if Calkins' trial counsel took advantage of the sentencing judge's "suggest[ion]," Calkins' trial counsel only reviewed the victim impact statements for the purpose of determining the proper restitution amount. (See id. 30:6-9 (specifically discussing

Appellate Case: 14-1578   Page: 12   Date Filed: 08/04/2015 Entry ID: 4302704

on the government's own admission, it was impossible that Calkins' trial counsel reviewed all of the evidence used to develop the summary because the information was not produced by probation prior to the district court's adoption of the PSR.

Further, during the course of this appeal, Calkins' new appellate counsel successfully collected some victim impact statements that, arguably, support her position that the summary includes individuals who loaned money because they were family or friends of Calkins—and not because of misrepresentations about the health of the company.  The evidence collected by Calkins' new appellate counsel supports Calkins' request for an evidentiary hearing.

The majority further contends that Calkins' claim of ineffective assistance of counsel is contradicted because Calkins' trial counsel made a strategic decision to focus on leniency.  The majority asserts that, in doing so,  Calkins' received a three-point, instead of a two-point, offense level decrease.  But, if we assume Calkins' allegations are true, Calkins would be entitled to a five-point offense level decrease.[8]

Pursuant to U.S. Sentencing Guidelines Manual § 3E1.1 cmt. n.1(A), a defendant only acts inconsistent with acceptance of responsibility when s/he "falsely denies, or frivolously contests, relevant conduct."  (Emphasis added).  Assuming

_____

restitution)).  Moreover, no evidence exists in the record relating to any such action by counsel.

[8]I further note that Calkins would likely have received a downward variance along with the offense level decrease because "the Guidelines related to fraud convictions [often] do not present a reasonable starting point for sentencing." United States v. Fry, – F.3d –, –, No. 13-3502, 2015 WL 4035369, at *8 (8th Cir. July 1, 2015) (Bright, J., concurring in part and dissenting in part) (citing United States v. Watt, 707 F. Supp. 2d 149, 151 (D. Mass. 2010); United States v. Adelson, 441 F. Supp. 2d 506, 510, 515 (S.D.N.Y. 2006); Andrew Weissmann & Joshua A. Block, White-Collar Defendants and White-Collar Crimes, 116 Yale L.J. Pocket Part 286, 286 (2007)).

Calkins' allegation that the summary contains non-relevant conduct is true, disputing the loss amount would be neither a false denial nor a frivolous argument with respect to relevant conduct.   Therefore, because Calkins' dispute would have been nonfrivolous and in good faith, Calkins would have been entitled to an offense-level decrease for both a lower loss amount and acceptance of responsibility and leniency. See, e.g., United States v. Castillo, 779 F.3d 318, 325-26 (5th Cir. 2015) (vacating a sentence and remanding to allow the district court to determine whether a defendant in good faith challenged the amount of loss such that the defendant was still entitled to an acceptance of responsibility reduction in a misapplication of bank funds case); United States v. Eschman, 227 F.3d 886, 891-92 (7th Cir. 2000) (holding the district court clearly erred in rejecting an acceptance of responsibility deduction when defendant's objections to the PSR were made in "good faith").

Therefore, Calkins' allegations, if true, amounted to ineffective assistance of counsel, and there exists a factual dispute that can only be resolved with an evidentiary hearing; specifically the extent to which trial counsel investigated the summary and whether any lack of investigation prejudiced Calkins.  See Witthar v. United States, – F.3d –, No. 14-1612, 2015 WL 4385675, at *2-4 (8th Cir. July 17, 2015) (per curiam) (holding an evidentiary hearing was necessary when a petitioner's allegations amounted to ineffective assistance of counsel and the record did not clearly establish the petitioner was not entitled to relief).  For this reason, I would hold the district court abused its discretion by denying Calkins relief without an evidentiary hearing.

## III.  CONCLUSION

For these reasons, I respectfully disagree with the majority and would hold the district court was required to hold an evidentiary hearing on Calkins' section 2255 motion because the record does not establish Calkins was not entitled to relief.  I would vacate the order denying Calkins' section 2255 motion and remand to the district court for an evidentiary hearing.

_____